468 So.2d 1067 (1985)
The STATE of Florida, Appellant,
v.
Jorge FUKSMAN a/K/a Jorge Isaac, Appellee.
No. 84-190.
District Court of Appeal of Florida, Third District.
May 14, 1985.
Jim Smith, Atty. Gen., and Randi Klayman Lazarus, Asst. Atty. Gen., for appellant.
Alvarez & Gamba and Arturo Alvarez, Miami, for appellee.
Before SCHWARTZ, C.J., and NESBITT and DANIEL S. PEARSON, JJ.
NESBITT, Judge.
The state appeals the granting of Fuksman's motion to suppress. Finding that the trial court utilized the wrong standard in deciding the motion, we reverse and remand for further proceedings.
The facts, viewed in the light most favorable to Fuksman, are as follows. On July 14, 1983, after receiving information that airline tickets were being illegally removed *1068 from Euro Travel Agency in southwest Dade County, Detective LaVoie, Sergeant Varnell and an investigator from the Air Traffic Conference placed the agency under surveillance. After three hours of surveillance, Fuksman exited the agency carrying a briefcase and drove off in a Lincoln Continental. The officers followed him in two cars. After a short distance, Fuksman committed a traffic violation. When Fuksman arrived at an apartment complex in northwest Miami, Sergeant Varnell approached to ticket him for the infraction. Detective LaVoie then approached, identified himself as a police officer and, without stating a reason or telling the defendant he was free to leave, began questioning him. At some point Detective LaVoie asked if he could search the car, but he did not inform Fuksman of either the nature of the investigation or the object of the search. Fuksman responded affirmatively and manipulated the door lock mechanism, unlocking all the doors. Detective LaVoie opened the door, picked up the defendant's briefcase and began to open the combination lock.[1] Fuksman asked "May I help," to which the detective responded "No, I've got it." The briefcase contained illegally obtained airline tickets. Fuksman was then placed under arrest.
The trial court granted Fuksman's motion to suppress the airline tickets. The court, placing the burden on the state of proving consent by clear and convincing evidence, found: (1) that consent was not freely and voluntarily given; and (2) that the defendant had not consented to a search of his briefcase. Our initial discussion concerns the standard of proof which the state must satisfy in showing both the voluntariness and scope of consent. We then discuss the particular findings which the trial judge made in this case.
The general rule in search and seizure law is that warrantless searches are per se unreasonable. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). One of the exceptions to that rule is that a warrantless search conducted with consent is permissible. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). A consent search is valid when the consent is freely and voluntarily given, id., 412 U.S. at 233, 93 S.Ct. at 2050, and when it is conducted within the scope of the consent. United States v. Rackley, 742 F.2d 1266, 1270-71 (11th Cir.1984). The trial court required the state to prove consent by clear and convincing evidence. While there is support in the Florida case law for that proposition, we find a Florida supreme court decision requires, on the facts of this case, application of a preponderance of the evidence standard.
The Florida supreme court recently articulated a preponderance standard for voluntariness of consent determinations. Denehy v. State, 400 So.2d 1216 (Fla. 1980). The court did not cite or discuss prior cases which had established a clear and convincing evidence standard. See, e.g., Bailey v. State, 319 So.2d 22 (Fla. 1975). In fact, the court cited a voluntariness of confession case, McDole v. State, 283 So.2d 553 (Fla. 1973), as support for the preponderance standard. While the overwhelming number of Florida decisions, including post-Deneby cases, contain statements that voluntariness must be shown by clear and convincing evidence, Bailey; State v. Santamaria, 464 So.2d 197 (Fla. 3d DCA 1985); State v. Spencer, 432 So.2d 718 (Fla. 3d DCA 1983); Leonard v. State, 431 So.2d 614 (Fla. 4th DCA 1983), and while it is unusual for the court to so casually overrule prior case law, we will not, and cannot under Hoffman v. Jones, 280 So.2d 431, 433-34 (Fla. 1973), assume that the supreme *1069 court's pronouncement was mistaken or unintended.[2],[3]
Having decided the question of what standard is applicable, we turn our examination to the factual determinations made by the trial court in this case. The trial court found that the consent to search the car was not freely and voluntarily given. However, even viewing the evidence in the light most favorable to Fuksman, as we must in this case, McNamara v. State, 357 So.2d 410, 412 (Fla. 1978), we find the trial court was clearly erroneous. While the officers did not tell Fuksman why they were questioning him, neither was there a show of force or other circumstances which demonstrate any coercion. Detective LaVoie asked if he could search the car, and Fuksman, an intelligent, middle-aged businessman, agreed and unlocked the door. Clearly, the greater weight of the evidence established a free and voluntary consent to search the automobile. Deneby; see also United States v. Almand, 565 F.2d 927 (5th Cir.), cert. denied, 439 U.S. 824, 99 S.Ct. 92, 58 L.Ed.2d 116 (1978) (unlocking of vehicle sufficient to support finding of consent).
Our next inquiry is whether the consent to search the car extended to the locked briefcase within the car. The state cites State v. Wargin, 418 So.2d 1261 (Fla. 4th DCA 1982) as authority for its contention that the consent encompassed the briefcase. In Wargin, the fourth district decided, in a conclusory fashion and without analysis, that the holding in United States v. Ross, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982) applies to consent cases. We disagree. See Palmer v. State, 467 So.2d 1063 (Fla. 3d DCA 1985) (citing Wargin for general consent principles, but specifically refusing to endorse the broad conclusion that Ross applies to consent searches).
In Ross, the United States Supreme Court held that
[t]he scope of a warrantless search based on probable cause is no narrower  and no broader  than the scope of a search authorized by a warrant supported by probable cause ... If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search. (emphasis supplied)
456 U.S. at 823, 825, 102 S.Ct. at 2172, 2173. The foundation of the automobile exception is the existence of probable cause. Ross, 456 U.S. at 807-09, 102 S.Ct. at 2163-64; Caroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1924). It is the presence of probable cause and the practical considerations which emanate from its presence in the automobile search context which form the basis of the decision in Ross. The court emphasized, first, the necessity of the existence of probable cause and, second, the consequences of not allowing a search of containers. Those *1070 consequences include the greater intrusion of seizure or detention of the vehicle, containers and/or persons involved until a probable cause determination can be made by a magistrate. Ross, 456 U.S. at 806-08, 102 S.Ct. at 2163-64. The court specifically indicated that it was not deciding the scope of warrantless searches of automobiles done without probable cause. Id., at 809 n. 11, 102 S.Ct. at 2164 n. 11.
The considerations upon which the holding in Ross is grounded do not exist in the consent search context where there is no probable cause. If a person consents to the search of a vehicle containing luggage and a search of the vehicle alone reveals nothing, the problem of the possible greater intrusion by detention or seizure does not arise because the probable cause necessary to secure the warrant is nonexistent. Therefore, the officer has no dilemma because he has no choice; he must let the consenting party be on his way. It is because the citizen has not given the police probable cause to believe his vehicle contains contraband that he has the right to proceed without official interference. Absent probable cause, the police can engage in the greater intrusion of searching the luggage only under circumstances in which the scope of the consent to search is defined clearly enough to include the luggage.
In addition, applying the Ross holding to consent searches emasculates the traditional rule that the scope of a consent search is determined by the totality of the circumstances by making one circumstance, the general consent to search an area, preeminent. The application of Ross to automobile consent cases would establish a per se rule that consent to search the car includes consent to search all closed containers within the car, regardless of other circumstances which may be present; this, despite the fact that the consenting party would be unaware that his consent had such an extensive scope. The police may already obtain a person's consent without informing him he has the right to refuse. Schneckloth; Bailey. We will not further expand the consent exception by holding that a general and ill-defined consent to search a vehicle necessarily includes permission to search every package and container within the vehicle.[4]See State v. Cole, 31 Wash. App. 501, 643 P.2d 675 (Ct.App. 1982); State v. Cuzick, 21 Wash. App. 501, 585 P.2d 485 (Ct.App. 1978) (both of these pre-Ross cases held that the general consent to search a vehicle did not extend to luggage within the vehicle). Cf. People v. Thiret, Colo., 685 P.2d 193 (1984) (grant of permission to "look around the house" did not authorize a 45-minute search, including an inspection of piles of clothes and debris and an examination of drawers, boxes and containers); State v. Carney, 423 So.2d 511 (Fla. 3d DCA 1982) (permission to board a boat not equivalent of consent to search hidden compartments and containers).
Application of Ross in the consent context would, in effect, place the burden on the consenting party, who has done nothing to create probable cause, to explicitly define the scope of the search. It is not merely the consenting party's words and actions, but the words and actions of all involved, as well as the surrounding circumstances, which define the scope of a consent search. The totality of the circumstances is the proper test for determining the scope of such a search. United States v. Covello, 657 F.2d 151 (7th Cir.1981); United States v. Sierra-Hernandez, 581 F.2d 760 (9th Cir.), cert. denied, 439 U.S. 936, 99 S.Ct. 333, 58 L.Ed.2d 333 (1978); Martin v. State, 411 So.2d 169 (Fla. 1982). It is the Wargin court's apparent departure from the application of that standard with which we disagree.[5]
*1071 In the instant case the trial judge essentially found that any consent given did not extend to the briefcase. However, as previously stated, the trial court used the wrong standard in requiring clear and convincing evidence of consent. Since we cannot say that the facts in this case established consent to search the briefcase, or lack thereof, as a matter of law,[6] we must reverse and remand to allow the trial court to make a new determination utilizing the appropriate standard.
Reversed and remanded for further proceedings consistent with this opinion.
SCHWARTZ, C.J., concurs.
DANIEL S. PEARSON, Judge, concurring specially.
I agree that in a case such as this, where there was no illegality or coercion preceding the defendant's consent to search, the State is required to prove consent merely by a preponderance of the evidence. I disagree, however, with any implication in Judge Nesbitt's opinion that the preponderance of the evidence standard of proof applies to all consent to search cases, including cases where the consent is given after an illegal stop or other coercive action. In my view, neither Denehy v. State, 400 So.2d 1216 (Fla. 1980), nor any binding United States Supreme Court decision has established a preponderance standard for all consent cases without regard to whether the consent is given after an initial illegal stop or other coercive action.
First, although it is true that Article I, Section 12 of the Florida Constitution mandates that we follow United States Supreme Court search and seizure decisions, see p. 1069 n. 3, the United States Supreme Court has not to this day decided whether the party seeking to establish the defendant's consent to a search must prove that consent by a preponderance of the evidence or by clear and convincing evidence or by some other quantum of proof. Lego v. Twomey, 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972), decides only that the prosecution's burden of proof in a hearing to determine the admissibility of a confession is to prove by a preponderance of the evidence that the confession was voluntary. United States v. Matlock, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1973), the other case to which Judge Nesbitt refers, merely states, citing to Lego, that the controlling burden of proof at suppression hearings is no greater than a preponderance of the evidence. Likewise, Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968), and Florida v. Royer, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983), frequently cited by courts as establishing a standard by which consent searches must be proved, do nothing more than inform us that "[w]hen a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that the consent was, in fact, freely and voluntarily given." Bumper v. North Carolina, 391 U.S. at 548, 88 S.Ct. at 1792, 20 L.Ed.2d at 802. Thus, while all agree that the prosecutor bears the burden of proving consent, the degree of that burden  the standard of proof  is very much in doubt. See, e.g., United States v. Andrews, 746 F.2d 247 (5th Cir.1984) (citing Royer in support of clear and convincing standard); United States v. Parker, 722 F.2d 179 (5th Cir.1983) (citing Bumper in support of clear and convincing standard); United States v. Selberg, 630 F.2d 1292 (8th Cir.1980) (citing Bumper and Matlock *1072 in support of preponderance standard); United States v. Ochoa-Almanza, 623 F.2d 676 (10th Cir.1980) (citing Matlock in support of preponderance standard); United States v. Block, 590 F.2d 535 (4th Cir.1978) (citing Bumper in support of preponderance standard); Finney v. State, 420 So.2d 639 (Fla. 3d DCA 1982) (citing Matlock in support of preponderance standard); Schlanger v. State, 397 So.2d 1028 (Fla. 3d DCA 1981) (same).
Second, Denehy v. State, 400 So.2d 1216, simply did not eradicate, without the slightest acknowledgment, scores of cases which speak of the requirement that consent must be proved by clear and convincing evidence.
The rule of Denehy is simply this:

"Under ordinary circumstances the voluntariness of the consent to search must be established by the preponderance of the evidence. Since there was no evidence of coercion such as prolonged detention or a threat to obtain a search warrant, or repeated requests for consent, the trial judge under the applicable standard of proof, could properly conclude from the officer's testimony that the appellants voluntarily consented to the search of the truck."

Id. at 1217 (citations omitted) (emphasis supplied).
In my opinion, the rule announced in Denehy leaves completely undisturbed the rule announced in Norman v. State, 379 So.2d 643 (Fla. 1980), decided only months before, that where consent is obtained after illegal police action, the consent will be found voluntary
"only if there is clear and convincing proof of an unequivocal break in the chain of illegality sufficient to dissipate the taint of prior official illegal action." 379 So.2d at 647 (emphasis supplied).
In a nutshell, then, Denehy establishes, as it expressly states, the standard of proof "under ordinary circumstances," and Norman establishes the standard of proof where the circumstances are not ordinary, that is, where illegal police action directed at the defendant has preceded the consent. The notion that the standard of proof may be different depending on the circumstances is hardly remarkable:
"When trying to establish that there was a voluntary consent after an illegal stop, the government has a much heavier burden to carry than when the consent is given after a permissible stop."

United States v. Ballard, 573 F.2d 913, 916 (5th Cir.1978).
Thus, there exist in Florida two perfectly compatible lines of cases  one requiring clear and convincing evidence of consent where the consent follows an illegal arrest, seizure, search, detention, or some other coercion, see, e.g., Norman v. State, 379 So.2d 643; Bailey v. State, 319 So.2d 22 (Fla. 1975); Sagonias v. State, 89 So.2d 252 (Fla. 1956) (en banc); Tennyson v. State, 469 So.2d 133 (Fla. 5th DCA 1985); State v. Santamaria, 464 So.2d 197 (Fla. 3d DCA 1985); Restrepo v. State, 438 So.2d 76 (Fla. 3d DCA 1983); State v. Spencer, 432 So.2d 718 (Fla. 3d DCA 1983); Robinson v. State, 388 So.2d 286 (Fla. 1st DCA 1980); Taylor v. State, 355 So.2d 180 (Fla. 3d DCA 1978), and one requiring that consent be shown by a preponderance of the evidence where there is no indication that the consent was procured through the exploitation of some initial illegal police action, see, e.g., Denehy v. State, 400 So.2d 1216; Finney v. State, 420 So.2d 639 (Fla. 3d DCA 1982) (en banc) (where there is no taint from an unconstitutional stop or seizure, the State need show consent only by the preponderance of the evidence); Schlanger v. State, 397 So.2d 1028 (Fla. 3d DCA), rev. denied, 407 So.2d 1105 (Fla. 1981) (same).[7] There being no initial illegality *1073 or coercion in the present case which could have tainted the defendant's consent, his consent need only be shown by a preponderance of the evidence, not, as the trial court believed, by clear and convincing evidence.
SCHWARTZ, C.J., concurs.
NOTES
[1] The briefcase was apparently the type which unlocks when all the dials are turned to zero. Detective LaVoie testified that he was familiar with such briefcases because he owned one himself. He also testified that upon picking up the briefcase and turning it over one of the latches opened; he then turned the combination dials next to the other latch and opened it, gaining access to the inside of the briefcase.
[2] The cogent analysis in Judge Pearson's concurrence may indeed explain the apparent conflict in the cases. Because this case does not involve any illegal police conduct which may have tainted Fuksman's consent, Judge Pearson's thesis is not necessarily inconsistent with our holding.
[3] In Lego v. Twomey, 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972), the United States Supreme Court held that the prosecution's burden in attempting to prove voluntariness of a confession is a preponderance of the evidence. The Supreme Court relied on Lego in United States v. Matlock, 415 U.S. 164, 177 n. 14, 94 S.Ct. 988, 996 n. 14, 39 L.Ed.2d 242 (1974), a search case, in which the Court stated that the controlling burden of proof at a suppression hearing is no greater than a preponderance of the evidence. The court has recently applied the preponderance standard to inevitable discovery determinations. Nix v. Williams, ___ U.S. ___, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984). These cases, read broadly, suggest that preponderance of the evidence is the standard to be applied at suppression hearings generally, regardless of the particular issue. Since article I, section 12 of the Florida Constitution mandates adherence to United States Supreme Court decisions on search and seizure, Florida courts may be required to utilize a preponderance standard in determining the voluntariness, as well as the scope, of a consent to search. But see, Tamer v. State, 463 So.2d 1236 (Fla. 4th DCA 1985) (absent a definitive ruling by the United States Supreme Court on a search and seizure issue, Florida law controls). Because Denehy requires a preponderance standard on these facts, it is not necessary for us to decide the question.
[4] We wish to note that after extensive research we have been unable to discover another case, either federal or state, which has even considered the application of Ross, an automobile exception case, in the consent context.
[5] While we will not speculate whether application of the appropriate standard in Wargin would have yielded the same result, we note that two important circumstances existed in Wargin which are not present in this case. First, the officers there identified themselves as narcotics agents, thereby informing the defendant of the nature of the investigation and the object of the search. Second, the defendant there made no comments during the search. He simply unlocked the suitcase (himself) and allowed it, and the container within it, to be searched.
[6] Because the determination is fact-bound, the cases reach varied results on similar, but at least arguably distinguishable, facts. Compare Carney; Major v. State, 389 So.2d 1203 (Fla. 3d DCA 1980), review denied, 408 So.2d 1095 (Fla. 1981); Luxenburg v. State, 384 So.2d 742 (Fla. 1st DCA 1980); Raleigh v. State, 365 So.2d 1048 (Fla. 4th DCA 1978) (finding no consent) with Martin; Bannister v. State, 434 So.2d 6 (Fla. 1st DCA 1983); State v. Price, 363 So.2d 1102 (Fla. 2d DCA 1978), cert. denied, 372 So.2d 470 (Fla. 1979) (finding consent).
[7] Contrary to the coexisting rules of Denehy and Norman, there are cases which use the clear and convincing burden where there has been no initial illegality, see, e.g., Younger v. State, 433 So.2d 636 (Fla. 5th DCA), rev. denied, 440 So.2d 354 (Fla. 1983); those which use the preponderance standard where there is an initial illegality or coercion, see, e.g., Palacios v. State, 434 So.2d 1031 (Fla. 1st DCA 1983); and those which do not expressly declare what standard is being used, but, based on the facts set forth in the opinion, cite to the wrong line of cases, thus obliterating the distinction between Denehy and Norman. See, e.g., Burke v. State, 465 So.2d 1337 (Fla. 5th DCA 1985).